IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS

ANTIONETTE WOODARD, individually and on behalf of a class of all persons and entities similarly situated,

    Plaintiff

vs.

HUMANA INC. and HEALTHUBB, LLC

    Defendant.

Case No. 1:23-cv-979

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO**
**DEFENDANT HUMANA INC.'S MOTION TO DISMISS**

**INTRODUCTION**

    The Court should deny Defendant Humana, LLP's ("Humana's") Motion to Dismiss as both procedurally and substantively deficient.

    First, although styled as a Rule 12(b)(2) motion, the motion is a thinly veiled effort to obtain a merits judgment without discovery. The Seventh Circuit has held that a motion to dismiss for lack of jurisdiction should not allow for this where a plaintiff otherwise adequately pleads a basis for jurisdiction, as here.

    Second, plaintiff Antionette Woodard ("Plaintiff" or "Ms. Woodard") has met her burden to allege personal jurisdiction in the complaint, and her allegations are in fact substantiated by the non-conclusory averments in the self-serving declaration Humana submits as the evidence to support its motion. The Complaint's allegations and evidence presented show that Humana can still be held vicariously liable because it accepted the benefits of Healthhubb's telemarketing calls on its behalf. As such, Humana's motion should be denied outright. The U.S Supreme Court and

1

the Seventh Circuit have clearly instructed that jurisdiction does not depend on whether a plaintiff succeeds on the merits.

Given that the U.S. Supreme Court and the Seventh Circuit have emphatically instructed that merits-based motions to dismiss for a purported lack of jurisdiction are disfavored, if the Court is not inclined to deny the motion outright, Plaintiff requests jurisdictional discovery to explore Humana's relationship with Healthhubb, LLC the entity that made the calls at issue, as well as and any possible intermediate entity that transferred the call to Humana.

## FACTUAL BACKGROUND

### Calls to the Plaintiff and Plaintiff's Investigation into their Source

The following facts are alleged in in the Complaint in this action and confirmed by the Declaration of Plaintiff Antionette Woodard, submitted as Exhibit 1 ("*Woodard Decl.*") and the Declaration of Andrew Heidarpour, submitted as Exhibit 2 ("*Heidarpour Decl.*").

Plaintiff's telephone phone number (312) 833-XXXX has been registered on the National Do Not Call Registry since September 25, 2022. *Compl.* ((Dkt. 1) ¶ 8 19; *Woodard Decl.* ¶ 3. Ms. Woodard's number is a residential line, is for her personal use and is not associated with a business. *Compl.* ¶¶ 20-21; *Woodard Decl*. ¶¶ 3-4. In spite of Ms. Woodard's number being on the National Do Not Call Registry, she received multiple telephone solicitations promoting Humana's insurance. *Compl.* ¶ 22; *Woodard Decl*. ¶ 5.

On October 30, 2022 at 12:54 pm, Ms. Woodard received a call from caller ID 331-249-3629 with the name Healthubb, LLC displayed, which she rejected. *Compl.* ¶ 23; *Woodard Decl*. ¶ 6. On October 30, 2022 at 4:55 pm Ms. Woodard received another call, this time from caller ID 331-249-3628 with the name Healthubb LLC displayed which she answered. The caller told Ms.

2

Woodard they were promoting Humana. Ms. Woodard responded that she was not interested and asked that they not call her. *Compl.* ¶ 24; *Woodard Decl.* ¶ 7.

On October 31, 2022 at 9:03 a.m., Ms. Woodard dialed the 331-249-3629 number to tell the caller to stop calling her. *Compl.* ¶ 25; *Woodard Decl.* ¶ 8. In spite of this request, and in spite of her number being on the National Do Not Call Registry, Ms. Woodard received another call on October 31, 2022 at 3:48 pm from caller ID 331-249-3628 with Healthhubb LLC displayed. *Compl.* ¶ 26; *Woodard Decl.* ¶ 9. Ms. Woodard answered that call. *Compl.* ¶ 27; *Woodard Decl.* ¶ 10. During that call, the caller promoted Humana insurance and Ms. Woodard was then transferred to man who identified himself as Martin Edwards. *Compl.* ¶ 28; *Woodard Decl.* ¶ 11.

Mr. Edwards gave Ms. Woodard the call back number 877-256-1640. *Compl.* ¶ 29; *Woodard Decl.* ¶ 12. A call to the call back number connected to Humana. *Compl.* ¶ 30; *Heidarpour Decl.* ¶ 2. Mr. Martin has an insurance license with the State of Florida which lists him as an employee of Humana. *Compl.* ¶ 31; *Heidarpour Decl.* ¶ 3 and Ex. A thereto. Ms. Woodard's privacy was invaded by the calls, they wasted her time, interrupted her day and were annoying. *Compl.* ¶ 32; *Woodard Decl.* ¶ 14.

Plaintiff alleges that by engaging Healthhubb to conduct telemarketing on its behalf, Humana has "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency. *Compl.* ¶ 38. Plaintiff further alleged Humana permitted Healthhubb the ability "to enter consumer information into the seller's sales or customer services" when it permitted Healthhubb to transfer Ms. Woodard's call over to Humana. *Compl.* ¶ 39. Plaintiff further alleged that

3

"Humana also ratified Healthubb's conduct by accepting the benefits of Healthubb's calling activity, including the business origination of the Plaintiff's information." *Compl.* ¶ 40.

### Humana Submits the Declaration of Sarah Elmer

In support of its motion to dismiss for lack of personal jurisdiction, Humana submits the Declaration of Sarah Elmer, the Market Vice President of Humana, Inc. Ms. Elmer's declaration is notable for what it does not say.

Ms. Elmer does not deny that Ms. Woodard received telephone calls promoting Humana insurance on her telephone, in spite of that number being listed on the National Do Not Call Registry. Ms. Elmer does not deny that Ms. Woodard was transferred to a Humana insurance agent named Martin Edwards who attempted to sell her Humana insurance. Ms. Elmer offers facts suggesting that Humana is not subject to general personal jurisdiction in Illinois—an assertion Plaintiff has not made. As to this Court's specific jurisdiction over Humana, all Ms. Elmer offers is that Humana after an "internal investigation" (which she does not describe) she has determined that Humana had no *direct* contact with HealthHubb, LLC. She does not identify an apparent intermediary in the transfer of Ms. Woodard to Humana with whom Humana *did* have direct contact. Instead, Ms. Elmer concludes that because Humana did not have direct contact with HealthHubb, it cannot be vicariously liable.

### LAW AND ARGUMENT

**I. The TCPA provides for vicarious liability if Humana did not itself physically place the call to Plaintiff.**

As a threshold matter, Humana's contention that it did not physically place the calls to Plaintiff does not mean it is not liable under the TCPA. Under the TCPA, a company can be held vicariously liable for texts or calls sent on its behalf by others. *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order,

10 FCC Rcd. 12391, 12397 (¶ 13) (1995); *May 2013 FCC Ruling [Dish Network]*, 28 FCC Rcd. At 6588 (¶ 37). The FCC has made clear that liability can attach even without a formal agency relationship or immediate direction and control of the third party who actually places the call. *Id.* at 6587 n. 107. As the FCC explained in the 2013 ruling in *Dish Network*, this is important because "the seller is in the best position to monitor and police TCPA compliance by third-party telemarketers." 28 FCC Rcd. at 6588. Accordingly, companies can be liable under theories of (1) actual or "classical" agency, (2) apparent authority, and (3) ratification. *Dish Network,* 28 F.C.C. Rcd. at 6586-87; *see also Kristensen v. Credit Payment Servs.*, 879 F.3d 1010, 1014 (9th Cir. 2018); *Cunningham v. Lifestyles Dev., LLC*, No. 419CV00006ALMCAN, 2019 WL 4282039, at *6 (E.D. Tex. Aug. 8, 2019), *report and recommendation adopted,* No. 4:19-CV-00006, 2019 WL 4277507 (E.D. Tex. Sept. 10, 2019). The FCC found that the following non-exclusive factors support vicarious liability: providing access to information normally in the seller's control, giving the other entity "authority to use the seller's trade name, trademark and service mark," approving, writing, or reviewing the messages sent by the other entity, and otherwise failing to take "effective steps" to force a telemarketing entity to cease violating the TCPA. 28 FCC Rcd. at 6588. Indeed, the Seventh Circuit has ruled a TCPA defendant may be vicariously liable for its "lead generator's unauthorized [calling] under actual authority, apparent authority, and ratification principles of agency liability." *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 587 (7th Cir. 2021). Each of these three theories offers "an independent basis" for vicarious liability. *Id*

  Moreover, even if the Healthhubb call to Ms. Woodard was transferred via to Healthhubb via an intermediate entity, this would not absolve Humana of liability, even if true:

> If attorney Jennifer Davis was an agent of Grange
> and Davis delegated to Hyde the power to investigate on behalf of

5

> Grange, then the actions of Hyde were performed on behalf of Grange. *See* 19 Williston on Contracts § 54:15 (4th ed. 2022) ("An agent who appoints a subagent delegates to the subagent power to act on behalf of the principal that the principal has conferred on the agent . . . and the principal's legal position is affected by action taken by the subagent as if the action has been taken by the appointing agent."); *Tippecanoe Loan & Tr. Co. v. Jester*, 180 Ind. 357, 101 N.E. 915, 922 (1913) ("Where . . . the owner knows . . . . that the business cannot be transacted by the primary agent, and also knows of the fact of the employment of a subagent, the latter is nonetheless the agent of the principal . . . .").

*Gaston v. Hazeltine*, No. 3:21-CV-896 JD, 2023 U.S. Dist. LEXIS 78836, at *19-20 (N.D. Ind. May 4, 2023)

      Humana knows this, which is why beyond its statement it didn't make the call at issue, it offers only conclusory statements in its declaration as to the ultimate legal question of vicarious liability. Humana in effect is asking the Court to determine its vicarious liability on the sole basis of a few unsupported and conclusory assertions without allowing for any discovery. As described below, the Seventh Circuit has consistently found such challenges to be improper.

**II.    Rule 12(b)(2) is not a vehicle to obtain a ruling on the merits without discovery.**

      Normally, when a defendant files a dispositive motion, it faces a stringent standard that favors the plaintiff (whether under Rule 12(b)(6) or Rule 56). To skirt these hurdles, defendants sometimes try to shoehorn a merits challenge into a pre-discovery Rule 12(b)(2) motion premised on factual affidavits outside the complaint. This is patently unfair because it deprives the plaintiff of the procedural protections of Rule 12(b)(6) (before discovery) and Rule 56 (after discovery). It also frustrates judicial economy by asking courts to make factual determinations without a full record and without the procedural strictures of Rule 12(b)(6) and Rule 56 that otherwise help frame dispositive matters for adjudication. Furthermore, this approach improperly collapses the issue of personal jurisdiction with the merits of the claim itself.

For these reasons, Seventh Circuit has consistently barred the use of Rule 12(b)(2) motions that, in effect, ask the Court to adjudicate the merits of a claim against the defendant. As the Seventh Circuit recently explained:

> The Supreme Court has cautioned against deciding merits questions when evaluating challenges to jurisdiction. See, *e.g., Steel Co.*, 523 U.S. at 89; *Bell*, 327 U.S. at 681-82. Jurisdiction, the Court has emphasized, 'is not defeated ... by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover.' *Bell*, 327 U.S. at 682; see also *Craftwood II, Inc. v. Generac Power Sys., Inc.*, 920 F.3d 479, 481 (7th Cir. 2019). To the contrary, '[w]hether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided *after* and not before the court has assumed jurisdiction over the controversy.' *Bell*, 327 U.S. at 682 (emphasis added); see also *Steel Co.*, 523 U.S. at 89 (reinforcing this principle); *Thornton v. M7 Aerospace LP*, 796 F.3d 757, 765 (7th Cir. 2015) (applying the *Bell* rule). This principle explains why we instructed in *Malak v. Associated Physicians, Inc.* that 'where a challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action,' the district court should handle the objection 'as a direct attack on the merits of plaintiff's case,' applying the protections inherent to merits challenges under Rule 12(b)(6)or Rule 56. 784 F.2d 277, 279-80 (7th Cir. 1986).

*Boim v. Am. Muslims for Palestine*, 9 F.4th 545, 557-559 (7th Cir.2021). In fact, the Seventh Circuit explained that the same was true *even after* jurisdictional discovery had been allowed. *Boim,* 9 F.4th at 558.

The fundamental flaw in Humana's argument that plaintiff is required to prove her case for vicariously liability was eloquently rejected by the Illinois Supreme Court in *Nelson v. Miller,* the seminal case on the scope of personal jurisdiction under the Illinois Long-Arm Statute

> The argument is founded on the assumption that the issue upon a special appearance to contest jurisdiction under section 17(1) (b) is whether upon the facts the defendant is liable to the plaintiff as a matter of substantive law. In other words, the assumption is that there is no jurisdiction unless all of the elements that combine to

7

> spell ultimate liability in tort are present. We reject that assumption.
>
> The jurisdictional fact, in the language of section 17(1)(b), is "the commission of a tortious act within this State." The word "tortious" can, of course, be used to describe conduct that subjects the actor to tort liability. For its own purposes the Restatement so uses it. (Restatement, Torts, § 6.) It does not follow, however, that the word must have that meaning in a statute that is concerned with jurisdictional limits. To so hold would be to make the jurisdiction of the court depend upon the outcome of a trial on the merits. There is no indication that the General Assembly intended a result so unusual. The essential question in cases of this type is where the action is to be tried. Once it has been determined that the relationship of the defendant to the State is sufficient to warrant trial here, we are of the opinion that the court has jurisdiction to determine the merits of the controversy, and that its jurisdiction will not be destroyed by its exercise.

*Nelson v. Miller*, 11 Ill. 2d 378, 391-92, 143 N.E.2d 673, 680 (1957). Humana invites error by suggesting that only a conclusively liable defendant is subject to the personal jurisdiction of this Court. This is not, and never has been the proper jurisdictional inquiry:

> That a claim may or may not pan out in the end, but jurisdiction does not depend on success on the merits. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998) ("It is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.*, the courts' statutory or constitutional *power* to adjudicate the case.") (emphasis in original); *Bell v. Hood*, 327 U.S. 678, 682, 66 S. Ct. 773, 90 L. Ed. 939 (1946) ("Jurisdiction, therefore, is not defeated as respondents seem to contend, by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover. For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction.")

*Plumbers' Pension Fund Local 130, U.S.A. v. Pellegrini Plumbing, LLC*, No. 20-cv-5024, 2023 U.S. Dist. LEXIS 8486, at *11 (N.D. Ill. Jan. 18, 2023). Notably, where the challenge to jurisdiction is based on a merits defense, there is no difference whether it is to the subject-matter

8

jurisdiction or exercise of personal jurisdiction over a defendant. In either case, only a *prima facie showing* is required, with all factual disputes resolved in favor of the plaintiff.

As this Court has recognized, in order to exercise personal jurisdiction over a defendant, a plaintiff need only establish a prima facie case for liability:

> Rule 12(b)(2) permits dismissal of a claim based on lack of personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). The party asserting personal jurisdiction bears the burden of proof. *See Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). The Court may consider affidavits submitted by the parties when resolving the question of personal jurisdiction. *Id.* at 782. The plaintiff need only establish a prima facie case of personal jurisdiction when the Court rules on the motion without an evidentiary hearing. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). Factual disputes and all reasonable inferences are resolved in favor of the plaintiff at this stage. *Purdue*, 338 F.3d at 782.

*Opus Fund Servs. United States (USA) LLC v. Theorem Fund Servs., LLC,* No. 17 C 923, 2017 U.S. Dist. LEXIS 160649, at *6-7 (N.D. Ill. Sep. 29, 2017) (Coleman Johnson, J). *See also* Kevin M. Clermont, *Jurisdictional Fact*, 91 Cornell L. Rev. 973, 980 (2006)(discussing *Nelson* and rejecting concept that an aggrieved Plaintiff need show anything more than a *prima facie* showing of liability to exercise personal jurisdiction over a defendant.)

III. **Humana can be found vicariously liable for accepting the benefits of HealthHubb's Telemarketing Calls.**

"[A] party may be liable under the TCPA in accordance with tort-related vicarious liability rules," including actual authority, apparent authority, and ratification. *Klein v. Just Energy Grp., Inc.*, No. 14-1050, 2016 U.S. Dist. LEXIS 84447, at *27 (W.D. Pa. June 29, 2016) (citing *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 674 (2016)); *see also In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6588 (F.C.C. 2013). "The existence of an agency relationship is normally one for the trier of fact to decide." *Carlson v. FedEx Ground*

9

*Package Sys.,* 787 F.3d 1313, 1318 (11th Cir. 2015); *see, e.g., Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 660 (4th Cir. 2019) (affirming TCPA vicarious liability jury verdict).

For TCPA claims specifically, there is a low bar to pleading vicarious liability, as a plaintiff is *not expected* to allege "facts suggesting that" the defendant: (1) "instructed" the putative agent "to make the call to" the plaintiff, (2) "had any authority over the time, means and manner of" the putative agent's solicitations, or (3) "had the ability to issue instructions … on these subjects." *Dolemba*, 213 F. Supp. 3d at 997 ("But Farmers does not suggest how Dolemba could reasonably be expected to know those facts at this stage in the litigation. Indeed, it is likely that all of the documents and information that establish (or refute) the details of the agency relationship between Farmers and the Lombardi Agency are exclusively within the Defendants' custody and control."); *see Cunningham v. Rapid Response Monit. Servs.*, 251 F. Supp. 3d 1187, 1199 (M.D. Tenn. 2017) ("Cunningham has investigated the parties extensively, but inevitably some aspects of their relationships will only come to light in discovery.").

Ultimately, in this case, Plaintiff pleads robust facts giving rise to an inference that Humana ratified the conduct of HealthHubb.

### A. Ratification

"Ratification occurs when a principal knowingly chooses to accept the benefits of unauthorized actions an agent takes on the principal's behalf." *Aranda v. Caribbean Cruise Line, Inc.*, 179 F. Supp. 3d 817, 833 (N.D. Ill. 2016); Restatement (Third) of Agency § 4.01(1) (2006) cmt. d. ("Ratification does not require a pre-existing formal agency relationship."). "[R]atification may create a relationship of agency when none existed between the actor and the ratifier at the time of the act. It is necessary that the actor have acted or purported to act on behalf of the ratifier." Restatement (Third) of Agency § 4.01 cmt. b; *see Henderson v. United Student Aid*

*Funds, Inc.*, 918 F.3d 1068, 1075 (9th Cir. 2019) (citing the Restatement and holding in a TCPA action that "ratification may create an agency relationship when none existed before the acts are 'done by an actor … who is not an agent but pretends to be.'"). To demonstrate prospective ratification, a plaintiff must show that a principal had full knowledge of all the facts, *or* was willfully ignorant of those facts, and manifested an intention to ratify the act in question, or that an agent acted for a principal's benefit and the principal "fail[ed] to object or repudiate an action." *Henderson*, 918 F.3d at 1074-75; *Aranda*, 179 F. Supp. 3d at 831.

The Ninth Circuit explained the circumstances that support a ratification theory in a TCPA case in reversing a district court's grant of summary judgment for the defendant:

> Royal Seas had knowledge of facts that would have led it to investigate Prospects's lead-generation activities to determine if it was calling only consenting individuals, but instead accepted leads generated by Prospects's calls with scant investigation. Royal Seas knew that Prospects placed calls using prerecorded voices, a prima facie violation of the TCPA. Royal Seas also knew that it received 2.1 million warm-transferred calls from Prospects between January 2017 and June 2018. Royal Seas knew that TCPA compliance required each call to be to an individual who had previously "agreed" to be called by Royal Seas ….
>
> Royal Seas also knew that of the 560 customers whom Prospects warm-transferred and who made purchases from Royal Seas, 13 percent had phone numbers that did not match the customer consent data that Prospects had provided to Royal Seas, and 31 percent did not have a matching phone number and last name. …
>
> These facts, in combination with the evidence of widespread TCPA violations in the cruise industry, would support a finding that Royal Seas knew facts that should have led it to investigate Prospects's work for TCPA violations. *See Henderson*, 918 F.3d at 1076. We reverse the district court's summary judgment in favor of Royal Seas as to ratification.

*McCurley v. Royal Seas Cruises, Inc.*, No. 21-55099, 2022 U.S. App. LEXIS 9079, at *6-8 (9th Cir. Apr. 5, 2022).

Here, Plaintiff sufficiently pleads Humana's vicarious liability predicated on a ratification theory (as well as actual and apparent authority). Indeed, Humana *participated on the*

11

*telemarketing calls* by having them transferred directly to them. Humana therefore knew about the illegal calls, but did nothing to stop them.

**IV.     If the Court does not deny Humana's Motion outright, the Court should defer ruling on Plaintiff's standing or allow jurisdictional discovery.**

Plaintiff respectfully submits that defendant's motion to dismiss for lack of personal jurisdiction should be denied outright as where, as here, the purported challenge to jurisdiction rests on a challenge to the central merits question of whether Humana is vicariously liable for the calls at issue. To rule otherwise would "would entail a full-dress trial on the merits as to all issues of liability, with troublesome judge/jury problems and difficult res judicata or law-of-the-case implications." *Jurisdictional Fact*, 91 Cornell L. Rev. 980, 977 (2006).

However, should the Court not deny Humana's Motion outright, the Court should defer ruling on to allow jurisdictional discovery. Plaintiff should be permitted to conduct jurisdictional discovery on extent of Humana's involvement in the calls and Humana's relationship with the entity that made the calls. *See JT's Frames, Inc. v. Casares*, N.D.Ill. No. 16-cv-2504, 2018 U.S. Dist. LEXIS 23565, at *15-17 (Feb. 12, 2018) (allowing jurisdictional discovery as to personal jurisdiction where defendants submitted declarations denying any involvement in the fax that formed the basis of the complaint to "explore Defendants' involvement (if any) with the Fax that forms the basis of Plaintiff's [complaint.]").

The Court has authority to "require a defendant to respond to discovery requests relevant to his or her motion to dismiss for lack of jurisdiction." *Zurich Am. Ins. Co. v. Tangiers Internatl. LLC*, N.D.Ill. No. 18 C 2115, 2018 U.S. Dist. LEXIS 134701, at *5 (Aug. 9, 2018). "Generally, courts grant jurisdictional discovery if the plaintiff can show that the factual record is at least ambiguous or unclear on the jurisdiction issue." *Id.* Court have also "generally

12

permitted limited discovery where the motion to dismiss makes a factual challenge to the jurisdictional allegations in the complaint." *Id.* at *5-6 (citing *Parkside Med. Servs. Corp. v. Lincoln W. Hosp., Inc.*, N.D.Ill. No. 89 C 2233, 1989 U.S. Dist. LEXIS 7722, at *3 (June 20, 1989) ("It has been held that *reasonable* discovery for purposes of demonstrating that jurisdiction does exist should be allowed, and that failure to permit such discovery would be treated as reversible error."); *Lester-Washington v. Wal-Mart Stores, Inc.*, S.D.Ill. No. 11-CV-0568-MJR, 2011 U.S. Dist. LEXIS 116006, at *4-6 (Oct. 7, 2011).)

Here, for the reasons described above, Plaintiff's Complaint and Declaration tracing the calls to Humana and Humana's conclusory declaration claiming to have had only limited involvement in the calls have left the question of the extent of Humana's involvement ambiguous and unclear, making jurisdictional discovery appropriate. Such discovery would include issuing interrogatories and document requests on the topics of Humana's role as a "behind-the-scenes player" with respect to the calls and its relationship with the entity that allegedly made the calls, a deposition of Sarah Elmer about the factual basis for the conclusory statements in his affidavit, and discovery from Healthubb, as well as any other entity involved identified by Humana, including communications with Humana and deposition testimony on their relationship with Humana. Plaintiff would request 180 days to conduct this limited jurisdictional discovery and would propose that the parties then file supplemental briefs within 30 days after the jurisdictional discovery period expires.

        PLAINTIFF,
By her attorneys,

*/s/ Edward A. Broderick*
Edward A. Broderick
Broderick Law. P.C.
176 Federal Street, Fifth Floor
Boston, MA 02110
(t) (617) 738-7080
(f) (617) 830-0327
ted@broderick-law.com

Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

Andrew W. Heidarpour (*pro hac vice application forthcoming*)
AHeidarpour@HLFirm.com
HEIDARPOUR LAW FIRM, PPC
1300 Pennsylvania Ave. NW, 190-318
Washington, DC 20004
Telephone: (202) 234-2727

Date: May 30, 2023

## Certificate of Service

    I hereby certify that I filed the foregoing with the Court's CM/ECF filing system which will effect service on all counsel of record.

*/s/ Edward A. Broderick*
Edward A. Broderick

Date: May 30, 2023

14